1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7   JEFFREY B.,                          Case No.  19-cv-02454-JSC

8                 Plaintiff,

9          v.                            **ORDER RE: CROSS MOTIONS FOR
                                         SUMMARY JUDGMENT**
10  ANDREW SAUL,
                                         Re: Dkt. Nos. 23, 24
11                Defendant.

12

13          Plaintiff seeks social security benefits for a variety of physical and mental impairments

14  including anxiety, depression, obesity, overactive bladder, bilateral shoulder pain, and chronic

15  obstructive pulmonary disease ("COPD").  (Administrative Record, ("AR") 382-383, 378, 436,

16  447).  Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff filed this lawsuit for judicial

17  review of the final decision by the Commissioner of Social Security ("Commissioner") denying

18  his benefits claim.  Now before the Court are Plaintiff's and Defendant's motions for summary

19  judgment.[1]  (Dkt. Nos. 23 and 24.)  After careful consideration of the parties' briefing, the Court

20  concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and the Court

21  GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further

22  proceedings.  Because the ALJ erred in weighing the medical opinion testimony and Plaintiff's

23  subjective pain testimony, but there are outstanding issues to be resolved before a disability

24  determination can be made, remand for further proceedings is proper.

25

26

27

28  [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
    636(c).  (Dkt. Nos. 10, 12.)

United States District Court
Northern District of California

# BACKGROUND

## A. Procedural History

Plaintiff filed an application for disability benefits under Title II and Title XVI of the Social Security Act (the "Act") on November 10, 2011, alleging a disability onset of October 1, 2009. (AR 85.) His applications were denied both initially and upon reconsideration. (AR 85.) Plaintiff then submitted a written request for a hearing before an Administrative Law Judge ("ALJ") and his hearing was held before Judge Nancy Lisewski (the "prior ALJ") on September 8, 2014. (AR 75.) On July 9, 2015, the ALJ issued a decision finding Plaintiff was not disabled.[2] (AR 82.) Plaintiff then reapplied for benefits on August 24, 2015, alleging a disability onset of October 1, 2009. (AR 209.) His applications were again denied both initially and upon reconsideration. (AR 140, 147.) Plaintiff then submitted a written request for a hearing before an Administrative Law Judge ("ALJ") and his hearing was held before Judge E. Alis on December 14, 2017. (AR 33.) The ALJ determined that Plaintiff's impairments had increased in severity since the prior ALJ hearing. (AR 18.) On March 29, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 28.) The ALJ found that Plaintiff had severe impairments of chronic pulmonary insufficiency, history of substance abuse, dysfunction of right wrist, status post fracture repair, status post ankle surgery, and obesity, but that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 20, 22.) The ALJ then determined that Plaintiff had the residual functioning capacity ("RFC") for less than the full range of light work. (AR 22-23.) The ALJ concluded that Plaintiff was not disabled because he could perform jobs existing in significant numbers in the national economy. (AR 27.)

Plaintiff then filed a request for a review of the ALJ's decision, which the Appeals Council denied. (AR 1, 206.) Plaintiff then sought review in this court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment, (Dkt. Nos. 23, 24).

---

[2] The prior ALJ found that Plaintiff's history of amphetamine use, morbid obesity, and sleep apnea was severe, while Plaintiff's urination issues, right wrist injury, arthritis, shoulder pain, and mental health issues were non-severe. (AR 87.) The prior ALJ relied on medical and psychological evaluations of experts and treating providers not included in this record. (*See* AR 90.)

United States District Court
Northern District of California

**B. Issues for Review**

1. Did the ALJ err in evaluating the medical opinion evidence?

2. Are the ALJ's step two findings based on substantial evidence?

3. Are the ALJ's step three findings based on substantial evidence?

4. Did the ALJ err in evaluating Plaintiff's credibility?

5. Is the ALJ's RFC finding based on substantial evidence?

6. Should the Court remand for payments of benefits or further proceedings?

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual function capacity," ("RFC") the claimant can still do her "past relevant work" and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.R.F. §§ 404.1520(a), 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal

3

quotation marks and citation omitted).  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Id.*  In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted).  However, "a decision supported by substantial evidence will still be set aside if the ALJ does not apply proper legal standards."  *Id.*

## DISCUSSION

### A.  The ALJ's Evaluation of Medical Evidence

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)).  A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a non-examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  "The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide 'clear and convincing' reasons for rejecting an uncontradicted opinion of an examining physician."  *Lester*, 81 F.3d at 830-31.

Plaintiff challenges the ALJ's decision to give partial weight to the opinions of (1) Plaintiff's treating medical provider Nurse Practitioner Frey but great weight to (2) state agency non-examining physical consultants Dr. Samplay and Dr. Dumani, and the ALJ's decision to give little weight to (3) consultative examiner Dr. Martin but great weight to (4) state agency non-examining psychological consultants Dr. Franco and Dr. Morris.

### 1.  Nurse Practitioner Frey

The ALJ accorded only partial weight to the opinion of Nurse Frey because some of Nurse Frey's limitations were "overly restrictive and not consistent with the overall record."  (AR 26.) Nurse Practitioner Frey treated Plaintiff approximately 14 times from 2014 to 2017 and provided a medical opinion regarding Plaintiff's ability to do work-related activities.  (AR 579.)  Nurse Frey

4

opined that Plaintiff could carry 25 pounds occasionally and 20 pounds frequently, can stand or walk for about four hours in an eight-hour workday, can sit for about six hours in an eight-hour workday, must alternate sitting, standing, or walking (with the need to change position after 30 minutes of sitting and after 30 minutes of standing), can occasionally stoop, should never kneel, crouch, or crawl, can occasionally climb stairs; should not climb ladders, and should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilations, and hazards (machinery, heights, etc.).  (*Id.*)

When reviewing claims filed prior to March 27, 2017, "a nurse practitioner is not an acceptable medical source," but is instead defined as an "other source[]" entitled to less deference.  *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1527(f).  "The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so."  *Molina*, 674 F.3d at 1111 (internal quotation marks and citation omitted).  Health care providers such as nurse practitioners, while not "acceptable medical sources," are still considered "medical sources," and the ALJ can use these other medical source opinions in determining the severity of the individual's impairments and how it affects the individual's ability to work.  20 C.F.R. § 404.1513(d).  In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or area of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion."  20 C.F.R. §§ 404.1512(b)(v), 416.912(b)(v).  Sometimes, after applying the factors, it may be more appropriate to give weight to a non-accepted medical source, particularly when that source is the claimant's treating provider, has seen the individual more often, and has provided better supporting evidence for her opinion.  *William A. v. Saul*, 433 F. Supp. 3d 1201, 1210 (D. Or. 2019) (citing 20 C.F.R. §§ 404.1512(b)(v), 416.912 (b)(v)).

Here, the ALJ's decision to accord only partial weight to the opinion of Nurse Frey in favor of the state agency consultants is not supported by substantial evidence.  First, as Plaintiff's

5

primary care provider, Nurse Frey treated Plaintiff for over three years, and his opinion is supported by a significant medical record, as confirmed by contemporaneous medical notes of Plaintiff's visits with Nurse Frey. (*See* AR 436-488, 528-531); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (finding error where the ALJ assigned little weight to the nurse practitioner's report when it was supported by "voluminous notes"). The ALJ makes no reference to these treatment records, nor to Plaintiff's treatment history with Nurse Frey.

Second, although the ALJ's determination that Nurse Frey's opinion was inconsistent with the record would be a reason sufficiently germane to reject his opinion, the record does not support such a determination. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (finding the ALJ improperly discounted the opinions of treating social workers when substantial evidence did not support the conclusion that their opinions were inconsistent). The ALJ's only example of an inconsistency is that one of Nurse Frey's progress notes stated that Plaintiff had chronic pain and arthralgia, while Nurse Frey's opinion stated that Plaintiff had arthritis. (AR 25-26.) However, Nurse Frey's opinion is consistent with the record because Plaintiff's diagnosis of arthritis is included in other chart notes from Nurse Frey. (*See* AR 441.) Moreover, arthralgia is the most significant symptom of arthritis.[3] Therefore, the ALJ's conclusion that Nurse Frey's opinion was inconsistent with the overall record is not supported by substantial evidence.

Third, the ALJ's assertion that Nurse Frey's opinion is "overly restrictive" is similarly contradicted by the record regarding Plaintiff's ability to climb stairs, crouch or kneel, and sit or stand for long periods of time. For instance, Plaintiff is morbidly obese and was treated and referred to physical therapy for leg numbness and knee and ankle pain. (AR 542, 573-574.) These findings support Nurse Frey's opinion that Plaintiff should never crouch or kneel, can occasionally climb stairs, and cannot sit or stand for a long period of time. The ALJ points to Plaintiff's ability to ride a bike for an hour and walk up two flights of stairs as evidence that he can engage in moderate activity. (AR 24.) However, the ability to climb stairs or ride a bike may not transfer to Plaintiff's ability to get through a typical workday. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling

---

[3] J.G. Hardin, Arthralgia, (3rd edition 1990). Chapter 160. Available from: https://www.ncbi.nlm.nih.gov/books/NBK303/.

United States District Court
Northern District of California

environment of the workplace, where it might be impossible to periodically rest or take medication.").  Moreover, the definition of "occasionally" in Nurse Frey's opinion of Plaintiff's ability to climb stairs is "up to one-third of an eight-hour day."  (AR 578.)  If Plaintiff can climb up two flights of stairs, there is nothing overly restrictive about estimating that Plaintiff would be able to climb stairs for over two hours a day.  Therefore, the ALJ's conclusion that Nurse Frey's overall opinion is "overly restrictive" is not supported by substantial evidence.

However, the ALJ did not err in his conclusion that Nurse Frey's testimony is "overly restrictive" as to Plaintiff's ability to climb ladders. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.  Along with Plaintiff's obesity, Plaintiff has chronic pain from a past wrist injury and bilateral shoulder pain.  (AR 533, 561.)  These conditions could prevent Plaintiff from climbing ladders, as Nurse Frey opined.  However, Plaintiff is also able to ride his bike for up to an hour several times a week, which suggests that Plaintiff's shoulder and wrist pain might not prevent him from climbing ladders.  (*See* AR 24.)  Because Plaintiff's ability to climb ladders is up to interpretation, the ALJ's conclusion stands to the extent that it relies on this aspect of Nurse Frey's opinion.  Nevertheless, the record supports Nurse Frey's other determinations, and therefore the ALJ failed to give reasons sufficiently germane to accord Nurse Frey's overall opinion less weight than the opinions of the state agency consultants.

### 2.  Non-examining State Agency Consultants Dr. Samplay and Dr. Dumani

In contrast to the opinion of Nurse Frey, the ALJ gave great weight to the opinions of non-examining state agency physical consultants Dr. Samplay and Dr. Dumani because they were "consistent with the overall record."  (AR 25.)  Dr. Samplay and Dr. Dumani opined that Plaintiff could carry 20 pounds occasionally and 10 pounds frequently; can stand, sit or walk for six hours in an eight-hour workday; can push or pull as much as he can lift or carry; can occasionally climb ropes, ladders, or scaffolds; can occasionally stoop or crouch; and should avoid concentrated exposure fumes, odors, dusts, gases, poor ventilation, etc.  (AR 114-116, 130-132.)  Dr. Samplay and Dr. Dumani found that Plaintiff's COPD was severe, but his essential hypertension was not severe.  (AR 112, 128.)  Dr. Samplay did not consider Plaintiff's substance addiction disorders, but Dr. Dumani concluded they were severe.  (AR 128.)  Neither considered any of Plaintiff's

other physical impairments.  Both Drs. Samplay and Dumani stated that no material change had taken place since the prior ALJ hearing and adopted the prior ALJ's decision.  (AR 112, 128.)

Because non-examining sources have no examining or treating relationship with a claimant, the weight given to their medical opinions depends on the degree to which they provide supporting explanations for their medical opinions.  20 C.F.R. § 404.1527(c)(3).  The ALJ should evaluate the degree to which these medical opinions consider all the pertinent evidence in a claim, including medical opinions of treating and other examining sources.  *See id.*  "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence on the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the ALJ erred in giving great weight to the opinions of non-examining state agency consultants Dr. Samplay and Dr. Dumani over the opinion of Nurse Frey.  In contrast to Nurse Frey's opinion, Dr. Samplay's and Dr. Dumani's opinions regarding Plaintiff's ability to climb stairs and kneel, and the omission of a number of Plaintiff's impairments, are inconsistent with the record as a whole.[4]  For instance, Plaintiff's morbid obesity, chronic knee and ankle pain, and leg numbness contradict Dr. Samplay's and Dr. Dumani's opinion that Plaintiff's ability to kneel or climb stairs is "unlimited."  *See, e.g.*, *Haagenson v. Colvin*, 656 Fed. App'x. 800, 802 (9th Cir. 2016) (the ALJ erred in crediting non-examining physicians when the overall medical record supported the treating physician's opinion that plaintiff could not use her right hand to write or type).  Whether Plaintiff can occasionally climb ropes and ladders is open to interpretation, as discussed in the analysis of Nurse Frey's opinion, so the ALJ did not err in relying on this aspect of Dr. Samplay's and Dr. Dumani's opinion.  (*See* AR 533, 561.)  However, Drs. Samplay and Dumani omitted consideration of how Plaintiff's obesity, shoulder and ankle pain, asthma, sleep apnea, and knee and wrist injuries could affect his ability to work.  Because Dr. Samplay's and Dr.

---

[4] However, the consultants' assessment of the severity of Plaintiff's conditions is consistent with the record.  That Plaintiff's chronic pulmonary insufficiency is severe is supported by the overall record, as evidenced by Plaintiff's diagnosis of COPD, his need for a CPAP machine, and his inhaler use.  (AR 378, 545.)  The consultants' assessment of Plaintiff's hypertension as not severe is also supported by the overall record, as there is no mention of a change in Plaintiff's hypertension in his visits past 2015 or how it would interfere with Plaintiff's ability to work.  (*See* AR 382, (diagnosis listed in urologist's 2015 report).)

United States District Court
Northern District of California

Dumani's opinions about Plaintiff's overall work capacity are inconsistent with independent clinical findings, nor are they supported by the overall record, the ALJ's conclusion to place great weight on their opinions is not supported by substantial evidence.

### 3. Dr. Martin

The ALJ gave little weight to the opinion of consultative examining psychologist Dr. Martin because Dr. Martin's opinion was "overly restrictive" and "inconsistent with the record as a whole." (AR 26.) Dr. Martin completed a "Psychological Disability Assessment Report" on February 12, 2016. (AR 427-435.) Dr. Martin administered several mental and intelligence exams and diagnosed Plaintiff with a mood disorder, amphetamine abuse, pain disorder due to psychological and medical factors, and ADHD. (AR 432.) Dr. Martin determined Plaintiff to be mildly limited in performing detailed and complex tasks; moderately limited in regular attendance in the workplace; moderately limited in performance of activities on a consistent basis; mildly limited in performance of activities without special supervision; markedly limited in the ability to complete a normal workday or workweek without interruptions resulting from Plaintiff's psychiatric condition; moderately limited in the ability to accept instructions from supervisors; moderately limited in the ability to interact with coworkers or the public; and moderately limited in the ability to deal with the usual stresses of a competitive work environment. (AR 433.)

To reject the opinion of an examining physician that is contradicted by another doctor's opinion, the ALJ must state "specific and legitimate reasons supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (internal quotation marks and citations omitted). The ALJ can meet this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (internal quotation marks and citations omitted).

Here, the ALJ's decision to place little weight on the opinion of Dr. Martin is not supported by substantial evidence. First, Dr. Martin's opinion, as the only mental health expert to examine Plaintiff, is entitled to more weight than the opinions of Dr. Morris and Dr. Franco, the non-examining consultants. *See Orn*, 495 F.3d at 631 (an examining physician's opinion is entitled to more weight than that of a non-examining physician). Second, the reasons the ALJ offers for rejecting Dr. Martin's opinion are neither specific nor legitimate. *See Trevizo*, 871 F.3d

United States District Court
Northern District of California

at 675.  The ALJ concluded that the mental status exam conducted by Dr. Martin, which indicated average to low-average test scores, contradicted Dr. Martin's opinion regarding Plaintiff's work capacity.  (AR 26.)  However, Dr. Martin's exam reflects mostly low-average test scores and a Global Assessment of Functioning ("GAF") score of 58 out of 100, which indicates overall "moderate" difficulty in social, occupational, or school functioning.  (*See* AR 432); *Garrison*, 759 F.3d at 1000 n.4 (internal citation omitted).  This GAF score is consistent with Dr. Martin's opinion that Plaintiff's work capacity is moderately limited in four ways, mildly limited in two, and markedly limited in one.  *See Garrison*, 759 F.3d at 1004 (stating that plaintiff's GAF score of 55 resulted in a mental status exam of "moderate" and "moderately severe" difficulty in social, occupational, or school functioning).  The medical evidence also reflects that Plaintiff was diagnosed and treated for depression and anxiety, including a prescription for Zoloft and Seroquel, which supports Dr. Martin's opinion regarding the severity of Plaintiff's impairments.  (*See* AR 452-454, 457-459); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (finding the ALJ's purported "inconsistency" to be illusory because the examining physician's diagnosis of depression was consistent with the record).  Therefore, the ALJ's assertion that Dr. Martin's opinion was inconsistent with the record is not supported by substantial evidence.  *See Nguyen*, 100 F.3d at 1465 ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as a basis for rejection of an examining physician's conclusions.").

Further, while the ALJ points to Plaintiff's lack of regular mental health treatment since the application date (AR 26), that a claimant may be "one of the millions of people who did not seek treatment for a mental disorder until late in the day" is not a substantial basis to conclude that an examining psychiatrist's assessment is inaccurate.  *Nguyen*, 100 F.3d at 1465.  Plaintiff was referred to a mental health intake by Nurse Frey in December 2017, which suggests Plaintiff's mental health issues are ongoing despite the lack of consistent treatment.  (*See* AR 574.)

Accordingly, the ALJ failed to provide legitimate and specific reasons supported by substantial evidence for affording little weight to Dr. Martin's opinion.

### 4.  Dr. Franco and Dr. Morris

The ALJ does not mention state agency psychological consultants Dr. Franco and Dr. Morris by name, but uses their opinions as supporting examples for an analysis of the four areas of

mental functioning and adopts the conclusions of Drs. Franco and Morris.  (AR 21.)  Since the ALJ relied on the opinions of Drs. Franco and Morris but explicitly rejected the opinion of Dr. Martin, it appears that the ALJ credited the opinion of the state agency consultants over that of Dr. Martin.  In contrast to Dr. Martin's opinion, Dr. Franco and Dr. Morris both opined that Plaintiff's psychological impairments were "not severe," and rejected Dr. Martin's opinion as overly restrictive.  (AR 112-113, 128-131.)  Both consultants opined that Plaintiff was only mildly restricted by his mental health issues in his ability to work.  (*Id.*)  Neither Dr. Franco nor Dr. Morris completed a mental residual functional capacity assessment.  (AR 109, 127.)

The ALJ provides neither specific nor legitimate reasons for crediting the opinions of Dr. Franco and Dr. Morris over that of Dr. Martin.  As discussed above, Dr. Martin's opinion was entitled to more weight than the opinions of Drs. Franco and Morris because, unlike the state agency consultants, Dr. Martin conducted a full psychological evaluation.  *See Orn*, 495 F.3d at 631 (an examining physician's opinion is entitled to more weight than that of a non-examining physician).  While the ALJ fails to provide specific and legitimate reasons for discounting Dr. Martin's opinion, the ALJ gives no reason at all as to why Dr. Franco's and Dr. Morris's opinions are more persuasive.  Further, the ALJ provides no evaluation of the degree to which Dr. Franco and Dr. Morris considered all the pertinent evidence in the claim, including the opinion of Dr. Martin and Plaintiff's history of treatment for depression and anxiety.  *See* 20 C.F.R. § 404.1527(c)(3).  Dr. Franco's and Dr. Morris's opinions are inconsistent with the independent record indicating that Plaintiff has a history of mental illness that still affects his daily life.  (*See* AR 452-454, 457-459); *Thomas*, 278 F.3d at 957 (opinions of non-examining physicians may serve as substantial evidence when consistent with the evidence on the record).  Therefore, the ALJ's decision to credit Dr. Morris's and Dr. Franco's opinions over the opinion of Dr. Martin is not supported by substantial evidence.

***

In sum, the ALJ erred in giving great weight to the state agency consultant medical and psychological opinions, while giving only partial weight to the opinion of Plaintiff's primary care provider, Nurse Frey, and little weight to the opinion of examining psychological consultant Dr. Martin.

**B.  The ALJ's Determination of Plaintiff's Credibility**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo*, 871 F.3d at 678.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted).  "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.*  (internal quotation marks and citation omitted).  If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing."  *See Thomas*, 278 F.3d at 959.

Here, applying the two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 24.)  Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms, or else find evidence of malingering.  *Lingenfelter*, 504 F.3d at 1036.  The ALJ found no evidence of malingering, but found that the evidence did not support Plaintiff's alleged loss of functioning because his allegations were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 24.)  After an analysis of each of Plaintiff's medical conditions, the ALJ suggests that Plaintiff's activities of daily living undermined his subjective reports of pain.  (*See* AR 26-27.)  In addition, the ALJ concluded that Plaintiff's testimony contradicts finding chronic pain and urination issues at the intensity and level that Plaintiff claims.  (AR 27.)

The ALJ erred in determining that Plaintiff's ability to complete simple daily tasks undermined Plaintiff's credibility as to the severity and persistency of his chronic pain.  The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

United States District Court
Northern District of California

12

2001).  The ALJ explains that Plaintiff could "clean the yard," could care for his father, and could walk up two flights of stairs as evidence that Plaintiff is not credible.  (AR 27.)  However, these are all are the type of daily activities that are not indicative of Plaintiff's ability to get through a typical workday.  *See Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").  For instance, Plaintiff testified that taking care of his father consists of making sure he eats and take his medicine, which is consistent with Plaintiff's testimony regarding his chronic pain.  (AR 46, 50-51); *see Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (claimant's ability to cook a meal and do the dishes did not detract from finding a disability).  Plaintiff injured his wrist while "cleaning the yard," but the record gives no indication that Plaintiff was doing heavy yard work at the time.  (AR 542.)  Additionally, the record as a whole and Plaintiff's testimony of his daily life at the hearing contains no mention that Plaintiff can regularly do yard work or spends a significant portion of his day climbing up stairs. (AR 51-52); *see Vertigan*, 260 F.3d at 1050 (finding that certain physical activities did not detract from plaintiff's credibility where they did not consume a substantial part of her day)  Therefore, that Plaintiff can complete some activities such as yard work, taking care of his father, and climbing stairs does not detract from Plaintiff's credibility.

However, the ALJ did not err in his determination of Plaintiff's credibility as to the severity of his urination issues and bilateral shoulder pain.  To determine whether the claimant's testimony is credible, the ALJ may consider "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms . . . and [] the claimant's daily activities."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ identifies Plaintiff not needing to take any break during the forty-minute hearing as inconsistent with Plaintiff's statement that he must go to the bathroom at least five times per hour as a result of his urination issues.  (*See* AR 20, 48.)  The ALJ also notes that Plaintiff complained of severe bilateral shoulder pain but could ride his bike for up to an hour several times a week.  (AR 24.)  Although, as discussed in the analysis of Nurse Frey's opinion, this may not transfer to Plaintiff's ability to work, bike riding several hours a week may be more strenuous than the daily activities discussed above.  *See Vertigan*, 260 F.3d at 1050 (stating that grocery shopping, driving a car, or limited

walking for exercise were all examples of daily activities that did not preclude a finding of disability).  Considering the limited evidence in the record, Plaintiff's credibility as to his shoulder pain and urinary issues is susceptible to more than one rational interpretation.  *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  Therefore, the ALJ did not err in determining Plaintiff only partially credible in this regard.

        For the reasons stated above, the ALJ erred in the determination of Plaintiff's credibility as to the severity and persistency of Plaintiff's chronic pain.

        **C.  Harmless Error**

        Because the ALJ's consideration of the medical evidence and subjective pain testimony are not supported by substantial evidence, the ALJ's decision cannot stand.  Given this, the Court need not consider Plaintiff's additional arguments regarding the ALJ's step-two and step-three analysis and the RFC.  The ALJ's errors here go to the heart of the disability determination and are not harmless.  "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).  For instance, Nurse Frey opined that Plaintiff would miss work at least three times a month and Plaintiff's impairments would interfere with 20% of Plaintiff's workday.  (AR 579.) Dr. Martin opined that Plaintiff would be markedly limited in completing a normal workday or workweek without interruptions resulting from Plaintiff's psychiatric condition.  (AR 433.)  The severity and persistency of Plaintiff's chronic pain also contributes to a disability determination. Had the ALJ not erred in weighing the medical opinion evidence and determining Plaintiff's credibility, the ALJ could have reasonably come to a different conclusion regarding Plaintiff's physical and mental capacity to work.  *See Stout*, 545 F.3d at 1056 (error was not harmless where crediting lay testimony supported a conclusion that the plaintiff's mental impairments would preclude him from returning to gainful employment).  Therefore, the ALJ's error in placing great weight on the opinion of state agency non-examining consultants over the opinion of an examining psychiatrist and Plaintiff's primary care provider is not harmless, nor is the ALJ's error with respect to discounting Plaintiff's subjective pain testimony.

United States District Court
Northern District of California

### D.  Remand for Benefits or Further Proceedings

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful.  *See Harman v. Apfel,* 211 F.3d 1172, 1178.  Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits.  *See Smolen,* 80 F.3d at 1292.  More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  *Harman,* 211 F.3d at 1178.

Here, the first prong of the test is not satisfied because the record has not been fully developed.  There are outstanding issues that must be resolved before a final determination can be made given the Court's conclusion that the ALJ erred (1) with respect to his weighing of the medical evidence of the severity of Plaintiff's mental illness, and (2) with respect to his weighing of Plaintiff's subjective pain testimony.  The second prong of the test has been satisfied, as discussed above, because the ALJ erred in weighing the medical opinion evidence and determining Plaintiff's credibility.  The third prong, however, is not satisfied.  It is not clear from the record that the ALJ would be required to find Plaintiff disabled were the evidence properly credited.  During the ALJ hearing, the Vocational Expert ("VE") testified that, based on the ALJ's RFC, Plaintiff would be suited to work as a cashier, house cleaner, or fast-food worker.  (AR 56.)  The VE then testified that after taking off more than 10% of work, or missing work once a month, a person would no longer be employable in those jobs.  (AR 58.)  However, the VE did not testify that Plaintiff would be unable to work in *any* job under such conditions.  On remand, the ALJ shall properly weigh the medical opinion evidence in the record and Plaintiff's subjective pain testimony in making a disability determination.  In doing so, the ALJ should reconsider his findings at steps two and three of the sequential analysis as necessary.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This order disposes of Dkt. Nos. 23 & 24.

**IT IS SO ORDERED.**

Dated: November 3, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge